## Wytheville.

RICHMOND, PETERSBURG & CAROLINA RAILROAD CO. v. CHAMBLIN
& SCOTT.

June 12, 1902.

1. EMINENT DOMAIN—*Elements of Damage.*—While, in condemnation proceedings, no damages can be allowed for injuries to the trade or business of the land-owner, it is proper to consider the uses of the land for all purposes, and particularly the uses to which the owner has applied it, and also all the facts and circumstances likely to enter into the value of the land. Injury to access, and increase of difficulty and costs of handling freight on the residue of the land, are proper elements of damage to be considered.

2. EMINENT DOMAIN—*Conditional Award of Damages—Surplusage.*—Under the evidence in this cause, it was not error in the trial court to strike out, as surplusage, a clause in the report of the commissioners to assess damages to the effect that the condemned property was to be acquired on condition that the railroad company should, on the application of the defendants in error, construct a designated spur track at a cost of $500, to be paid by the defendants in error.

Error to a judgment of the Hustings Court of the city of Richmond, rendered March 18, 1901, in a condemnation proceeding wherein the plaintiff in error was the plaintiff, and the defendants in error were the defendants.

*Affirmed.*

This is a proceeding to condemn land for the purposes of a railroad company. The report of the commissioners to assess damages is set forth in the opinion of the court. On the hear-

ing, the Hustings Court was of opinion that so much of the report as provides that the property mentioned therein should be acquired on the *condition* therein specified was irrelevant, null and void, entered an order so declaring, and in all other respects confirmed the report and directed the same to be recorded. This action of the court constitutes the third assignment of error mentioned in the opinion of the court.                :

*Munford, Hunton, Williams & Anderson*, for the plaintiff in error.

*Charles S. Stringfellow* and *E. P. Cox*, for the defendants in error.

KEITH, P., delivered the opinion of the court.

The Richmond, Petersburg & Carolina Railroad Company presented its petition to the Hustings Court of the city of Richmond, from which it appears that it is a corporation organized under the laws of this State; that it is engaged in constructing a railroad through the city of Richmond, and that it is necessary for that purpose to acquire certain land belonging to Chamblin & Scott, which is more fully described in a notice and plat accompanying the petition; that it has been unable to come to an agreement as to its purchase, and therefore asks for the appointment of five disinterested freeholders, to ascertain and report what would be a just compensation for so much of the land of Chamblin & Scott as may be necessary for its purposes.

The commission was appointed, and it reported as follows:

"We, S. H. Pulliam, T. Wiley Davis, Gilbert J. Hunt, and W. H. Scott, appointed by the Hustings Court of the city of Richmond, by its order of the 2d day of April, 1900, to ascertain what will be a just compensation for such part of the freehold whereof John Chamblin and James W. Scott are tenants, as is proposed to be taken by the Richmond, Petersburg and

Carolina Railroad Company for their purposes, do certify that, on the 14th day of April, 1900, the day designed in said order, we met together on the said part of the land, the limits of which part were then and there described to us as follows, to-wit:

"1. That lot of land on the west line of Sixteenth street, between Broad and Grace streets, beginning 198 feet south of Broad street, and fronting on Sixteenth street 22 feet, and running back between parallel lines to the space reserved for Shockoe Creek; being lot No. 58 in Adams' plan.

"2. And also that lot of land on the west side of Sixteenth street, between Broad and Grace streets, beginning 220 feet south of Broad street, and fronting on Sixteenth street 22 feet, and back between parallel lines 100 feet to space reserved for Shockoe Creek; being lot No. 59 in Adams' plan.

"Said property to be acquired upon the condition that upon the application of said Chamblin & Scott, the said Railroad Company shall construct a spur track from their main freight line into the yard of Chamblin & Scott, at the grade level of their said lot, in accordance with the plat by the Chief Engineer of the said Railroad Company submitted; and the said Chamblin & Scott shall pay for the said track $500, the amount agreed by said Railroad Company.

"And, after being first duly sworn, upon a view of the part aforesaid, and upon such evidence as was before us, we are of opinion, and do ascertain, that for the said part, and for the damage to the residue of the tract beyond the peculiar benefits to be derived in respect to such residue from the work to be constructed, eleven thousand nine hundred and ninety-five ($11,995) dollars will be a just compensation."

When this report was returned to the court, the Railroad Company filed exceptions, but it was afterwards agreed between the parties that the question of the confirmation or rejection of the report should be submitted to the court, without technical objections.

The court having heard the evidence and argument of counsel, confirmed the report, and allowed Chamblin & Scott the sum of $11,995 for the land proposed to be taken by the Railroad Company and damage to the residue of the tract.

To that order a writ of error was awarded by this court.

In the petition there were three assignments of error, the second of which was very properly waived at the hearing, and the first and third of which are now relied on.

"First. The amount of the award is grossly excessive, and was arrived at by the commissioners through a mistaken conception of the principles of law which should govern their action; which error on the part of the commissioners, resulting in an award far in excess of the proper sum to be allowed, was ratified by the decree of the Hustings Court of the city of Richmond complained of. And here let it be noted that the plaintiff is not seeking to combat any conclusions as to the estimate made by the commissioners, of the value of the land acquired by the plaintiff, nor as to the amount of damages to the remainder of the tract in consequence of this taking. It is well appreciated that the findings of the commission upon such a question would be regarded as entitled to great weight, and not to be disturbed by the courts, except in instances where excessive estimates on their part could be demonstrated by clear evidence. The plaintiff insists, however, and the record abundantly shows, that the commissioners in this case did not seek to ascertain simply the value of the land taken and the damages to the residue of the tract occasioned by the taking, but based their award upon supposed losses to the defendants in the conduct of their business as foundrymen, which would result from the increased cost of hauling to and from their plant, in consequence of the closing of the roadway opening into Sixteenth street."

This frank assignment of error relieves us of the burden of entering upon a detailed discussion of the evidence, and leaves us to determine whether or not the commission took into their

consideration elements of damage, which, by law, they were not authorized to do.

In determining the value of land appropriated for public purposes the enquiry must be, what is the property worth in the market from its availability for valuable uses, both now and in the future. *Boom Co.* v. *Patterson*, 98 U. S. 403.

It appears in the case cited that the Mississippi and Rum River Boom Co. owned three islands in the Mississippi river, fitting them to form, in connection with the west bank of the river, a boom of immense dimensions, capable of holding in safety over twenty millions of feet of logs, which added largely to the value of the lands. . . . "Their adaptability for boom purposes was a circumstance, therefore, which the owner had the right to insist upon as an element in estimating the value of his lands."

In *Monongahela Nav. Co.* v. *United States*, 148 U. S. 312, it was held that the compensation for private property taken for public use must be a full and perfect equivalent for the property taken. That case arose under a federal law, but the same measure of compensation is, we think, proper under the provisions of our Constitution.

Mr. Justice Brewer, in the course of his opinion, proceeds as follows: "What does the full equivalent demand? The value of property, generally speaking, is determined by its productiveness—the profits which its use brings to the owner. Various elements enter into this matter of value. Among them we may notice these: Natural richness of the soil as between two neighboring tracts—one may be fertile, the other barren; the one so situated as to be susceptible of easy use, the other requiring much labor and large expense to make its fertility available. Neighborhood to the centers of business and population largely affects values. For that property which is near the center of a large city may command high rent, while property of the same character, remote therefrom, is wanted by but few,

and commands but a small rental. Demand for the use is another factor. . . . . . . . For each separate use of one's property by others, the owner is entitled to a reasonable compensation, and the number and amount of such uses determines the productiveness, and the earnings of the property, and therefore, largely its value."

The text writers are to the same effect. Lewis on Eminent Domain, sec. 487, says: "While it is proper to show how the property is used, it is incompetent to go into the profits of the business carried on upon the property. No damages can be allowed for injuries to the business. The reason is that the owner is entitled only to the value of the property taken and the damage to the remainder, if any."

It seems to be well established that damages to the trade or business of the land-owner are generally too remote to be a subject of damages, because they depend upon contingencies too uncertain and speculative to be allowed. 6 Am. & Eng. Ency. Law (1 ed.), 573.

It would certainly be difficult, and perhaps impossible, to enumerate all the elements that go to constitute the value of property. There are no absolute measures or standards, and the methods to which, in such cases, courts are obliged to resort, can at best only approximate accuracy. The best that can be done is to appoint capable and upright commissioners to go upon the land, examine it, hear testimony, and consider all the facts and circumstances surrounding the situation, and likely to enter into the value of the subject, and thus ascertain what is the value of the land to be taken, and the effect of such taking upon the residue of the tract. In doing this it is necessary to consider the uses of the tract in question for all purposes, and certainly it would not be proper to disregard the particular use to which the owner had seen fit to devote it, for that would be to exclude, perhaps, the chief element of value.

In the case before us, Chamblin & Scott were the owners of

a lot of land in the lower part of the city of Richmond, upon which they had erected an extensive foundry. This business involves the movement of great quantities of coal to be consumed in their furnaces, of iron to be used in the foundry, and the shipment of the finished product. Their business had grown to large proportions. The Railroad Company found it necessary in the construction of its work to occupy a portion of this lot. The ground actually taken is so situated with respect to the residue of the tract as to render ingress and egress to and from it difficult and expensive.

In any business, and especially such as involves the movement of heavy freight, ease of access to and from the place where it is conducted, and facility in reaching lines of transportation must be important, if not controlling, factors, and as the value of property consists in its fitness for profitable use, its market value must be influenced in large measure by locality. There is no evidence in the record showing the profits of the business of appellees, and this is as it should be, but it is shown that the movement of freight from the premises to the railroads, and from the railroads to the land in question, would be very much more difficult and costly, and these causes would affect any business by whomsoever conducted at that place.

The authorities we have cited from the adjudicated cases and text writers seem to us sufficient to justify the commissioners in taking into consideration the use to which the property had been devoted by Chamblin & Scott as an element entering into their estimate of its market value. The result reached by the commission was a compromise of widely divergent estimates, and there is nothing in the amount fixed, nor in any fact disclosed by the record, to suggest even a suspicion that they were influenced by any improper motive. The commissioners examined the premises, the Hustings Court examined the commissioners, and other witnesses, and approved their report, and we are of opinion that there is no error in its judgment in this respect.

The third assignment of error is that the Hustings Court erred in attempting to amend and reform the report of the commissioners. This has reference to the clause in the report which states that the property is acquired "upon the condition that, upon the application of said Chamblin & Scott, the said Railroad Company shall construct a spur track from their main freight line into the yard of the said Chamblin & Scott at the grade level of their said lot, in accordance with the plat by the Chief Engineer of the said Railroad Company submitted; and the said Chamblin & Scott shall pay for the said track $500, the amount agreed by said Railroad Company."

This provision of the award seems to have been introduced for the benefit of Chamblin & Scott. It certainly could not operate to the advantage of the Railroad Company, as it was required to build a spur track, not for its own use or convenience, but for that of Chamblin & Scott, and the price to be paid for its construction, the sum of $500, its estimated cost, would have left no margin of profit. It would seem that the judgment of the Hustings Court had relieved the Railroad Company of a burden. It would have been required by the terms of the report to pay the whole amount that was adjudged against it, and if the so-called condition had been embodied in the judgment would also have been required at the will and pleasure of Chamblin & Scott to construct a spur track for a compensation of $500. If the condition had been for the benefit of the Railroad Company, the situation would have been different, but it can hardly be supposed that it was intended for the advantage of the Railroad Company when it was to become operative only upon the application of its antagonists.

Upon the whole case, we are of opinion that the judgment should be affirmed.

*Affirmed.*