# Richmond.

## RICHMOND & PETERSBURG ELECTRIC RAILWAY CO. AND ANOTHER v. SEABOARD AIR LINE RAILWAY.

### January 12, 1905.

1. CONDEMNATION PROCEEDINGS—*Continuance.*—In view of the provisions of chapter 46 of the Code to secure speedy action in condemnation proceedings instituted by internal improvement companies, and to transfer litigation about title from the land to the fund paid into court, it is not error to refuse a continuance of a motion to confirm the report of commissioners assessing damages until another suit to settle the title to the land has been decided. This is especially so where the party complaining is a party to the condemnation proceedings, and has abundant opportunity of introducing evidence in his behalf, and of being heard by counsel.

2. CONDEMNATION PROCEEDINGS—*Report of Commissioners—Weight.*—The report of commissioners to assess damages in condemnation proceedings is entitled to great weight, and their assessment will not be disturbed except in a very clear case of error. The commissioners are disinterested freeholders, selected for their fitness, act under oath, and possess the advantage of inspecting the property and of seeing the witnesses and hearing them testify. The law lays great stress upon the matter of the view, the effect of which cannot always be transmitted. Furthermore, the statute requires that their report shall be taken as *prima facie* correct.

3. CONDEMNATION PROCEEDINGS—*Damages—Speculative.*—In assessing damages, in condemnation proceedings, the commissioners should consider the actual value of the land with all of its adaptation to general and special uses at the time of their assessment, and not its prospective, speculative, or possible value, based upon future expenditures and improvements.

Error to a judgment rendered by the County Court of Ches-

terfield county, in a condemnation proceeding, wherein the defendant in error was the plaintiff, and the plaintiffs in error—the Richmond & Petersburg Electric Railway Company and James Bellwood—were the defendants. The Circuit Court of Chesterfield county refused a writ of error.

*Affirmed.*

The opinion states the case.

*William L. Royall,* for the plaintiffs in error.

*E. H. Wells* and *Munford, Hunton, Williams & Anderson,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

In April, 1899, the Richmond, Petersburg & Carolina Railroad Company, the predecessor of the defendant in error, the Seaboard Air Line Railway, instituted proceedings under chapter 46 of the Code of Virginia, edition of 1887, in the County Court of Chesterfield county, to condemn a right of way through a tract of 435 acres of land situated in said county on the Manchester and Petersburg Turnpike, about seven miles from the city of Manchester, and known as the "Madill" tract. At the time of the institution of these proceedings, George A. Madill, the proprietor of record of this land, was a non-resident of the State, and James Bellwood, his agent, was tenant of the freehold. Subsequently, it appearing that Bellwood had acquired a conveyance to the property, the former proceedings were abandoned, and new proceedings instituted against him individually.

At the June term, 1899, the County Court, over the objection of Bellwood, appointed a commission, composed of five disinterested freeholders, to ascertain what would be a just

compensation for the land proposed to be taken, and for damages to the residue.

It appears that Bellwood's farm tract, through which the railroad was also to pass, adjoins the "Madill" tract, and for damages to both tracts the sum of $12,348.85 was awarded. With respect to these properties, the commissioners in their report say: "Of a portion of the land from which the strip or part of land above described, and which is required by the Richmond, Petersburg & Carolina Railroad for its purposes, is carved or taken, James Bellwood appears to be the absolute and unquestioned fee-simple owner; of another portion, known as the "Madill," or "Drewry's Bluff," tract, but recently acquired by the said James Bellwood, it appears from the evidence before us that, while the fee-simple title also stands in the said James Bellwood upon the records, he is in fact only trustee of the latter tract, holding the legal title for the Richmond & Petersburg Electric Railway Company, the equitable or beneficial owner. By consent of parties, this latter company was permitted to appear before your commissioners as the true owner, and show its title and claim to damages occasioned by the taking of said strip, part or portion from the "Madill" tract; and for convenience and to avoid future contest and uncertainty between James Bellwood and the Richmond & Petersburg Electric Railway Company respecting the rightful share or proportion of each of the damages awarded, it was further agreed between the Richmond, Petersburg & Carolina Railroad Company, James Bellwood, and the Richmond & Petersburg Electric Railway Company that your commissioners should make an apportionment of the sum of damages above awarded between the said James Bellwood and the Richmond & Petersburg Electric Railway Company, showing what portion of said sum should go to each of said parties. Accordingly, in pursuance of this agreement or understanding, of the sum of

$12,348.85, above fixed and awarded by us as damages, we apportioned to James Bellwood the sum of $11,353.45, and to the Richmond & Petersburg Electric Railway Company the sum of $995.40, as compensation to them severally for the land actually taken from each, and for the damages to the residue of their respective tracts, beyond the peculiar benefits to be derived in respect to such residue from the work to be constructed."

Affixed to the report is the following statement, signed by counsel for Bellwood, the Richmond & Petersburg Electric Railway Company, and the Richmond, Petersburg & Carolina Railroad Company: "We hereby confirm the above in all respects save as to the correctness of the damages awarded, which is not admitted."

The report of the commissioners was returned August 14, 1899, and confirmed by the County Court June 13, 1901, as to the James Bellwood farm tract, and leave was given either party to make objection thereafter to the award with respect to the "Madill" tract.

In December, 1902, upon motion of defendant in error, the Seaboard Air Line Railway, successor of the Richmond, Petersburg & Carolina Railroad Company, the County Court, upon the evidence and argument of counsel, confirmed the award as to the "Madill" tract, no good cause being shown against it. To that order a writ of error was awarded by this court.

There are practically but two assignments of error in the case. It is contended:

First. That the County Court erred in overruling the motion of plaintiffs in error for a continuance; and,

Second. That the amount of damages awarded by the commissioners was inadequate; a result, it is said, chiefly owing to the refusal of the commissioners to take into consideration an important and essential element of damages in fixing the amount of their award.

The ground of the motion for a continuance was the pendency of a suit in equity, in the Law and Equity Court of the city of Richmond, between Bellwood, and Beach and others, involving the title to the "Madill" tract, the termination of which suit, it was insisted, a trial of the condemnation proceedings should await.

Aside from the circumstance that plaintiffs in error were parties to the condemnation proceedings, with the fullest opportunity of introducing testimony in their own behalf, and of being heard by counsel, both before the commissioners and the County Court, their contention would plainly contravene the terms and policy of the statute under which these proceedings were had.

Chapter 46 of the Code provides for service of notice on the tenant of the freehold, if there be such tenant (sec. 1075); the appointment of commissioners upon *that* notice (sec. 1076); the prompt return and confirmation of the report, unless good cause be shown against it; the payment of the damages assessed into court, and the absolute vesting of the title in the company to the part of the land for which such compensation is allowed (sec. 1079); the right of the company to enter upon the premises condemned and construct its work, and that no order shall be made nor any injunction awarded to stay the prosecution of the work, unless it be manifest that the company is transcending its authority, and that the interposition of the court is necessary to prevent injury that cannot be adequately compensated in damages (sec. 1081); and, finally, in order that the money paid into court may be properly disposed of, that a reference to a commissioner may be had to ascertain what persons are entitled to the fund, and in what proportions (sec. 1084).

It is obvious from the foregoing enactments that it was the policy of the Legislature to provide a summary remedy for con-

demning land for works of internal improvement, where the company and owner could not agree on the terms of purchase, and not to obstruct the company in the acquisition of a good title to the land needed for its purposes, or in the prosecution of its work, by controversies in respect to the title; but to transfer such controversy from the land to the fund which the company is required to pay into court.   *Va.-Carolina Co.* v. *Booker,* 99 Va. 633, 39 S. E. 591; *Ches., &c. R. Co.* v. *Washington, &c. R. Co.,* 99 Va. 715, 723, 40 S. E. 20; *Fulkerson* v. *Taylor,* 102 Va. 314, 321, 46 S. E. 309.

In the case of *Ches., &c. R. Co.* v. *Washington, &c. R. Co.,* *supra,* the court, at p. 724, in giving the reason for the rule, says: "If this be not the case, railroad companies would have no assurance that the steps taken by them to procure rights of way or property wanted for their purposes, would conclude any one, and they would be constantly subject to vexatious litigation.   This view is not only in accordance with the better reason, but is sustained by the weight of authority.   See 2 Mills on Em. Domain (2 Ed.), ss. 388, 389 and 391; *B. & O. R. Co.* v. *P. W. & Ky. R. R. Co.,* 17 W. Va. 844, and cases there cited; *St. Joseph R. R. Co.* v. *Hannibal, &c. R. R. Co.* (Mo.), 6 S. W. 691; *Secombe* v. *R. R. Co.,* 23 Wall. 109, 119, 23 L. Ed. 67; 1 Red. on Rys. (5th Ed.), 271."

The court is therefore of opinion that the first assignment of error is not well taken.

In considering the second assignment of error, namely: that the amount of damages awarded by the commissioners is inadequate, it must be borne in mind that by provision of the statute the report of the commissioners is to be taken as *prima facie* correct.   Code, sec. 1079.

In the very nature of things, the finding of the commissioners is entitled to great weight, and is not to be disturbed unless it is shown to be erroneous by clear proof.   The com-

missioners are disinterested parties, they act under the sol-
emnity of an oath, and are selected by the court from a con-
servative class of citizens, freeholders, on account of their
peculiar fitness for the service to be rendered. They also pos-
sess the advantage of inspecting the property and of seeing the
witnesses and hearing them testify.

In the case of *Crawford* v. *Valley R. R. Co.*, 25 Gratt. 457,
Judge Bouldin, speaking for the court, said: "We hold it to be
clear and unquestionable, under the plain mandate as well as the
spirit of the statute, that the report of the commissioners, ascer-
taining the amount of compensation and damages to be paid to
the land owner, must be confirmed by the court, and judgment
entered for the amount reported, unless, in the words of the
statute, 'good cause be shown against it.' This makes the com-
missioners' report, if no illegality nor irregularity appear on its
face, at least *prima facie* evidence of the propriety and cor-
rectness of the award of compensation and damages; and that
award must, therefore, stand as the judgment of the court, or
rather, the judgment of the court must accord therewith, unless
some sufficient matter be established to vary or arrest it. The
land owner must be passive, and the entire *onus* of showing
such sufficient cause is thrown on the objector."

And so, in *Cranford Paving Co.* v. *Baum*, 97 Va. at p. 501,
24 S. E. 906, Judge Riely, in delivering the opinion of the
court, observes: "When it becomes necessary to ascertain what
is just compensation for land taken for a public use, as in the
present case, the statute directs that the court shall appoint
five disinterested freeholders as commissioners to perform this
duty, and requires that in its performance they shall themselves
view the land so taken. The law lays great stress upon the matter
of the view, and justly attaches great weight to the report of
the commissioners. They are greatly aided, as they were in
this case, by the evidence of their own senses. They have the

advantage of seeing the land itself which is taken, and judging as to its value, and of determining the effect of the opening of the road upon the residue of the tract. They have as they also had here, after having their attention specially drawn to the element of damage relied upon, the opportunity to apply the evidence produced before them to the subject of the controversy, and to determine the weight to be given to its several parts. We are without the benefit of their opportunities, and of what they saw and were the judges, and it should be a very clear case, indeed, of inadequate compensation, to justify the court in disturbing their sworn, deliberate and disinterested judgment as disclosed in their report." *Richmond Traction Co. v. Murphy*, 98 Va. 104, 34 S. E. 982; *Richmond, &c., R. Co. v. Chamblin*, 100 Va. 401, 41 S. E. 750.

In the case of *Shoemaker* v. *United States*, 147 U. S. 306, 37 L. Ed. 170, 13 Sup. Ct. 393, the court said: "The rule on this subject is so well settled that we shall content ourselves in repeating an apt quotation from Mills on Eminent Domain, 246, made in the opinion of the court below: 'An appellate court will not interfere with the report of the commissioners to correct the amount of damages except in cases of gross error, showing prejudice or corruption. The commissioners hear the evidence and frequently make their principal evidence out of a view of the premises, and this evidence cannot be carried up so as to correct the report as being against the weight of evidence. Hence, for an error in the judgment of commissioners in arriving at the amount of damages there can be no correction, especially where the evidence is conflicting. Commissioners are not bound by the opinions of experts, or by the apparent weight of evidence, but may give their own conclusions.' "

But it is insisted that it was the purpose of promoters to develop the "Madill" tract as a public park, to be used in conjunction with the electric railway, by the expenditure of thou-

sands of dollars in the erection of a summer hotel, casinos, pleasure buildings, ball-ground, golf links, and other improvements, and that its value for such uses was practically destroyed by the construction of the defendant in error's railroad through the property. That it was, therefore, the duty of the commissioners, in making up their award, to have treated the property as a park, and not to have based their estimate upon its actual condition at the time the award was made.

This court cannot assent to the soundness of that proposition. In that connection the commissioners in their supplemental report say: "This claim, so far as based upon evidence of future indications and investments, the commissioners disallowed and rejected, holding the same as too speculative, remote or conjectural for them to be able to estimate, and in making their estimate and award, as above stated, took the said land in its present conditions with its adaptability as it at present stands to-day."

The above is a correct and succinct exposition of the principle of law which should control commissioners in arriving at a proper award. The reason of the rule is plain, and a departure from it would transfer the enquiry from the field of fact to that of fancy and speculation. It is the present actual value of the land with all its adaptations to general and special uses, and not its prospective, or speculative, or possible value based upon future expenditures and improvements that is to be considered.

In the case of *Schuylkill Run, &c. R. R. Co.* v. *Stocker*, 128 Penn. 233, 18 Atl. 399, it was held, that the jury was not to value the tract upon the theory of what it might bring platted and divided up into building lots; that they were to enquire what a present purchaser would be willing to pay for it in its present condition, and not what a speculator might be able to realize out of a re-sale in the future. See also *S. W. &c. R. Co.*

v. *Obell*, 18 Mo. App. 637; *Pinckham* v. *Chilmsford*, 109 Mass. 288; *Penn. R. R. Co.* v. *Cleony*, 125 Penn. St. 451, 17 Atl. 468, 11 Am. St. 913.

"The conclusion from the authorities and reason of the matter seems to be that witnesses should not be allowed to give their opinion as to the value of property for a particular purpose, but should state its market value in view of any purpose to which it is adapted. The condition of the property and all its surroundings may be shown, and its availability for any particular use. If it has a peculiar adaptation for certain uses, this may be shown, and if such peculiar adaptation adds to its value; the owner is entitled to the benefit of it. But, when all the facts and circumstances have been shown, the question at last is, what is its worth in the market." 2 Lewis on Em. Dom. 1056, 1057.

The above is substantially the doctrine enunciated by the Supreme Court of the United States in *Boom Co.* v. *Patterson*, 98 U. S. 403, 25 L. Ed. 206, cited by this court with approval in *R. & M. R. Co.* v. *Humphreys*, 90 Va. 425, 436, 18 S. E. 901.

The record shows that as a matter of law the award of the commissioners was founded upon correct principles, and as there was ample evidence to sustain it, the order complained of is without error and must be affirmed.

*Affirmed.*