Syllabus.

| 106 | 817 |
| 107 | 171 |
| 107 | 267 |

# Richmond.

TIDEWATER RAILWAY COMPANY v. COWAN AND OTHERS.

March 27, 1907.

Absent, Harrison, J.

1. EMINENT DOMAIN—*Exception to Commissioners—When Too Late—Waiver.*—After commissioners in condemnation proceedings, who were appointed on the suggestion of the parties, have performed their duties and made their report, it is too late to object that one of them was disqualified to act because not a freeholder. The objection will be deemed to have been waived, in the absence of evidence of prejudice.

2. EMINENT DOMAIN—*Damages to Residue—Railroads—Inconvenience During Construction.*—In estimating the damages done to 'the residue of a tract" of land, a part of which is taken in condemnation proceedings for railroad purposes, it is not error for the commissioners to take into consideration the expense and inconvenience to which the landowner will be put by throwing the farm open while the road is being constructed through it.

3. EMINENT DOMAIN—*Part of Tract Taken—Damages to Residue.*—Where a part of a tract of land is taken in condemnation proceedings for a railroad, the commissioners should first ascertain all the damages which the taking occasions to the land, and then ascertain the peculiar or special benefits which increase its value in a way in which the lands of others generally are not benefited, and if the former exceed the latter, award the excess to the land owner.

4. EMINENT DOMAIN—*Elements of Damage—Instructions—Estoppel.*—Where commissioners, in condemnation proceedings, have been instructed, without objection from either party, as to the elements of damage to be considered by them, and they have made a report in accord with such instructions, neither party will be allowed to complain of the action of the commissioners in doing what they were told it was their duty to do.

5. EMINENT DOMAIN—*Award of Commissioners—Weight—Objections—View.*—The award of commissioners in condemnation proceed-

ings is entitled to great weight, and will not be set aside in the absence of any evidence of bias or prejudice, or misconception on the part of the commissioners of the principles of law, which should control their action. They are not bound by the opinions of experts, or the apparent weight of the evidence, but, having viewed the premises, may give their own conclusions, and for a mere error in judgment as to the amount of damages, there is no redress. The view is regarded as of special importance.

Error to a judgment of the Circuit Court of Montgomery county in a condemnation proceeding. To the judgment awarding damages to the defendant, plaintiff assigns error.

*Affirmed.*

*Robertson, Hall & Woods* and *J. R. Johnson,* for the plaintiff in error.

*A. A. Phlegar* and *J. C. Wysor,* for the defendant in error.

CARDWELL, J., delivered the opinion of the Court.

This writ of error and supersedeas brings under review a judgment of the Circuit Court of Montgomery county, affirming the report of commissioners assessing damages to the defendants in error by reason of the proposed construction through and upon their property of plaintiff in error's line of railway, certain yards, chutes, etc.

It appears that the defendants in error own a tract of land—spoken of by witnesses as "a magnificent farm," "one of the best in Southwest Virginia," "one of the best I have ever seen"—lying in Montgomery county, and extending for five miles along New river, on the inside of a curve or horseshoe, and between the river and a public road ("Giles county road"), which practically connects the two points of the curve or horseshoe. There was in this boundary about 2,250 acres, used for grazing and feeding cattle of different classes, principally thor-

oughbreds for breeding purposes, and heavy cattle for export, and also horses, hogs and sheep.

Plaintiff in error located its railway along the river front, entirely through this land for a distance of about five miles, taking a strip from one hundred to two hundred feet wide, the latter width being taken for over a mile, in the very best river-bottom land in front of the dwelling, to be used for a railroad yard, coal chute, engine-house, etc., and, at the extreme upper end, for a passenger and freight station, as the company stated, but refused to guarantee. This strip of land taken contains 78.59 acres, of which about 49 are river bottom, and the residue rough land. It leaves between it and the river an irregular strip five miles long, varying in width from nothing to, at one point, 560 feet, containing 62 acres of bottom land.

For the land taken the commissioners allowed about the rate of $200 per acre for the bottom land, and $40 for the other; total, $10,622. As damages to the residue of the tract they allowed, as per their report, $21,500, stating expressly that they found no peculiar benefits to the place from the proposed railroad; and reported $32,122 as the aggregate sum which should be paid defendants in error.

To the report plaintiff in error filed three exceptions, the first on the ground that one of the five commissioners was not a freeholder, as required by statute; the second, on the ground that in assessing damages the commissioners took into consideration elements of damage which were not proper to be considered; and the third, on the ground that the damages allowed by the commissioners are grossly excessive, both as to the value of the land taken and as to the incidental damages to the residue of the tract.

What elements entered into the item of $21,500 do not appear on the report, but on the trial upon the exceptions to the report the court permitted plaintiff in error to treat and examine the commissioners as hostile witnesses, and to draw from them, over the objection of defendants in error, the reasons for and

the elements of such allowance.   From this examination of the commissioners it was made to appéar that they found that about 2,000 acres of land were cut off from the river, which was its main water supply, and to which all of the good grazing land can be and has been thrown open for its water supply; that it would be liable to damage by fire; that access to the timber would be obstructed, and a road destroyed; and that the value of the farm would be thereby much reduced; and for these things they assessed an average of $8.00 per acre, some of it being damaged á great deal more than other parts, "estimating just one damage for the whole 2,000 acres, after discussing each point."   They also found that the 62 acres cut off between the railroad and the river were worth $150 per acre, and would be damaged to the extent of $3,500—about $58 per acre.   They also found that defendants in error would be put to much expense and inconvenience during the construction of the railroad by having their farm thrown open, being compelled to fence both sides of the right of way for about three miles, and to change other fences in order to meet the changed order of things, by the disturbance of his stock and a consequent depreciation of their growth and value, and by the annoyance necessarily consequent upon the construction work.   This they ascertained would amount to $2,000; and this sum, together with the sums of $16,000 and $3,500, mentioned, made up the $21,500 assessed and reported as damages to the residue of the tract.

By the assignments of error in the petition for this writ of error the same questions are presented that were raised by the exceptions to the report of the commissioners confirmed by the Circuit Court, and the further question whether or not the court erred in permitting the introduction and consideration of evidence as to the value of the land of defendants in error taken for railroad purposes, without its being shown that the adaptability of the land for railroad purposes increased its market value; but in the oral argument here the case was narrowed

to the questions—first, whether the report of the commissioners should have been rejected because C. A. Crumpecker, one of the commissioners, was not a freeholder; and, second, whether or not the elements of damages entering into the finding of $2,000 as a part of the $21,500 assessed as damages to the residue of the tract, were legitimate and proper to be considered by the commissioners.

The five commissioners, including C. A. Crumpecker, were appointed at the February term, 1906, by an order of the court, reciting that the five were disinterested *freeholders,* resident in Montgomery county, and there was no exception to this judgment, no record of the evidence on which it was rendered, no objection made until the May term of the court, when the proceedings of the February term were closed against collateral attack; in fact, the record plainly shows, as is practically conceded in the petition for this writ of error, that the parties to this controversy selected all of the commissioners, told the court that they had done so, and on that statement they were appointed.

Plaintiff in error, although a corporation acting through its agents and officers, is presumed to know the law, and if it regarded that there is sanctity in the ownership of a freehold which prevents a party from waiving it in favor of character and intelligence, the fact (if it be a fact) that C. A. Crumpecker, one of the five commissioners agreed on, as in every way acceptable to the parties in interest, was not a freeholder should have been ascertained before he was selected, as it might easily have been, by the asking of a single question, and not wait until the duties of the commissioners have been performed and then, because their finding is not acceptable, make the objection that one of them was not under the strict letter of the law qualified to act as commissioner, and that, too, without showing that the fact that the commissioner was not under the law qualified to act was prejudicial to the party complaining.

This court refused to set aside a conviction for a felony by a

jury, two of whom were disqualified because they were not entitled to vote, and said: "But he (the prisoner) made no such inquiry, doubtless because he cared nothing about it, or preferred to have the benefit of the objection if he could make it in the event of a verdict against him." *Poindexter's Case,* 33 Gratt. 766; *Hite's Case,* 96 Va. 489, 31 S. E. 895; *Doyle's Case,* 100 Va. 808, 40 S. E. 925.

In *Roanoke* v. *Birkowitz,* 80 Va. 616, a condemnation report was sustained where one of the commissioners was not disinterested in the subject matter of the controversy, and where the facts, upon which the complaining party was held to have waived the objection he might have made when the commissioners were appointed and before they had acted, were not as strong as they are in the case at bar.

Coming, then, to the second question requiring our consideration, as stated above, it may be premised that in assessing damages to the residue of the tract, where a part of the land is taken in condemnation proceedings, it is proper for the commissioners to consider and allow any damages to the residue flowing directly from the taking of a part of the land, and not merely speculative, assuming always that the commissioners act without bias or prejudice, the damages to the residue to be reduced to the extent of the peculiar benefits, if any, to the residue of the tract not taken for the public improvement. This is the rule of law in such cases, too well recognized to require citation of authority.

In this case, the report of the commissioners is that there are no peculiar benefits to the residue of defendant in error's valuable tract of land to flow from the construction of the proposed railroad through it, and there was no attempt to prove that there would be such benefits. The commissioners, as we have observed, estimated $2,000 for damages during the construction, and made that a part of the $21,500 "damage to the residue," and as opposed to this finding the learned counsel for plaintiff in error rely on the recent case of *Swift & Co.* v.

*Newport News,* 105 Va. 108, 52 S. E. 821, 3 L. R. A. (N. S.) 404.

In that case, the facts were so far different from the facts of this case that it has no application here whatever. There no part of the land was taken, the improvement of the street in its front enhanced its value considerably, and necessitated some expense to meet the changed grade of the street; this expense was less than the enhancement of value, and plaintiffs claimed that the amount of this expense should have been allowed, regardless of the effect of the improvement on the whole lot. Upon that state of facts it was held, that no part of the land having been taken, the rule of assessment is: Ascertain the whole increased value of the property alleged to have been damaged by reason of the improvement; ascertain the items of depreciation (which necessarily include expense incurred in protecting the residue of the tract or lot) from the same causes; and, unless the latter exceed the former, allow nothing to the landowner on account of damages.

In the case at bar a part of the land is taken and the rule for the assessment of damages is different. Under it all the damages which the taking occasions to the land are to be first ascertained; then ascertain the peculiar or special benefits which increase its value in a way in which the lands of others generally are not benefited; and if the former exceed the latter, award the excess to the landowner. In the one case the landowner accounts for the general enhancement of value which he shares in common with others similarly situated, and on the other he does not do so.

While this court, in *Swift & Co.* v. *Newport News, supra,* sanctioned the ruling of the trial court refusing to instruct the jury to single out the item of damage which had been sustained and reject the benefit derived, it was not said nor intended to be said in the opinion that a jury or commissioners in condemnation proceedings should not ascertain the particulars in which a tract of land is damaged, and how much damage each item

occasions, and add them together, and where there are no bene-
fits, award the full amount or award the difference where there
are benefits. This rule of assessment was fully recognized in
the recent case of *Williamson* v. *Read, ante,* page 453, 56 S. E.
174, and in the authorities there cited.

As said by Keith, P., in the opinion in *Railroad Co.* v.
*Chamblin,* 100 Va. 406, 41 S. E. 750, it is certainly difficult
and perhaps impossible to enumerate all the elements which go
to constitute the value of property. There are no absolute meas-
ures or standards, and the methods to which, in such cases,
courts are obliged to resort can at best only approximate ac-
curacy. The best that can be done is to appoint capable and
upright commissioners to go upon the land, examine it, hear
testimony and consider all the facts and circumstances surround-
ing the situation and likely to enter into the value of the sub-
ject, and thus ascertain what is the value of the land taken,
and the effect of such taking upon the residue of the tract.
In doing this it is necessary to consider the uses of the tract in
question for all purposes, and certainly it would not be proper
to disregard the peculiar use to which the owner had seen fit
to devote it, for that would be to exclude, perhaps, the chief
element of value. It was recognized in that case, as settled by
a great weight of authority, that the findings of a commission
upon such a question would be regarded as entitled to great
weight, and not to be disturbed by the courts, except in instances
where excessive estimates on their part could be demonstrated
by clear evidence. See also *R. & P. R. Co.* v. *Seaboard, &c.,
Co.,* 103 Va. 399, 49 S. E. 572. The main question in all
such cases, there being no proof of bias or prejudice on the
part of the commissioners, is whether or not their award was
arrived at through a misconception of the principles of law
which should have governed them in their action.

When the commissioners in this case came to the considera-
tion of the damages which they should award defendants in
error, by agreement of counsel representing the respective par-

ties in interest, a set of instructions was submitted to them for their guidance, which had been given in other condemnation proceedings instituted by plaintiff in error. They told the commissioners that defendants in error were entitled, in addition to the value of the land taken, to compensation (1) for the deterioration in value by reason both of the construction and the operation of the railroad; (2) for annoyance and inconvenience from noise, smoke, etc.; (3) for all damages and inconveniences which directly result from the use of the land for railroad purposes; (4) for the adaptability of the land for railroad purposes; (5) blasting and other constructive work, so far as they affected the market value of the land; (6) interference with easements; (7) increased inconvenience of access and other injuries and inconveniences of like kind; (8) increased danger from fire; (9) increased inconveniences in the use of the property; (10) increased necessity for fencing; and (11) increased danger to live stock.

The commissioners testified that they did not take into consideration the peculiar fitness of the land taken for railroad purposes, but did take into consideration the other elements of damages brought to their attention by the instructions submitted for their guidance.

Whether all of the elements of damage referred to in these instructions were proper elements of damage to be considered by the commissioners we are not called upon to decide, and do not intend that anything said in this opinion is to be so construed, as the instructions were given without objection, and neither party can be allowed to complain that the commissioners did what they were told it was their duty to do.

We therefore find nothing in the evidence that would authorize an interference with the finding of the commissioners in favor of defendants in error for the aggregate sum of $32,122 as the value of the land actually taken and the damages to the residue of the property.

In the cases of *Cranford Paving Co. v. Baum,* 97 Va. 503,

24 S. E. 906, and *R. & P. R. Co.* v. *Seaboard, &c., Co., supra,* the rule is laid down that for error of judgment of the commissioners in arriving at the amount of damages there can be no correction, especially where the evidence is conflicting, unless the damages are so excessive, or inadequate, as to show prejudice or corruption. The reason for giving such great weight to the report of the commissioners is mainly on account of the fact that the law lays great stress upon the view, because the commissioners are greatly aided in arriving at their estimate of damages by an actual view of the premises affected.

In the last-named case, *Shoemaker* v. *United States,* 147 U. S. 306, 37 L. Ed. 170, 13 Sup. Ct. 361, is cited with approval, where it is said: "The rule on this subject is so well settled that we shall content ourselves in repeating an apt quotation from Mills on Eminent Domain, 246, made in the opinion of the court below: 'An appellate court will not interfere with the report of the commissioners to correct the amount of damages, except in cases of gross error, showing prejudice or corruption. The commissioners hear the evidence and frequently make their principal evidence out of a view of the premises, and this evidence cannot be carried up so as to correct the report as being against the weight of the evidence. Hence, for an error in the judgment of commissioners in arriving at the amount of damages, there can be no correction. Commissioners are not bound by the opinion of experts, or by the apparent weight of evidence, but may give their own conclusions.' "

We are of opinion that the judgment of the Circuit Court must be affirmed.

*Affirmed.*