# Wytheville.

## HUNTER'S ADMINISTRATOR v. CHESAPEAKE & OHIO RAILWAY COMPANY.

### June 13, 1907.

1. EMINENT DOMAIN—*Just Compensation—Market Value—Loss of Profit.*— Where the whole property is taken in condemnation proceedings under constitutional and statutory provisions declaring that private property shall not be taken for a public use without just compensation, the "just compensation" contemplated is the market value of the property in view of any purpose to which it is adapted. The full and perfect equivalent for the property taken is what the law contemplates as the market value thereof. Loss of profits in a business destroyed or damaged is not an element for consideration in determining the market value of the property taken, though the profits earned in a business conducted on said property are proper to be considered in determining the market value of the property taken.

2. EMINENT DOMAIN—*Finding of Commissioners—Weight—Testimony of Commissioners.*—The finding of the comissioners in condemnation proceedings is entitled to great weight, and is not to be disturbed unless shown to be erroneous by clear proof. Great weight is attached to the view. The commissioners see the land and can judge of its value themselves, and are also thereby better enabled to apply the evidence produced before them to the subject of controversy, and to determine the weight to be given to its several parts. This rule is not to be disregarded or affected by the mere fact the evidence relied on to overthrow the finding consists in part of the testimony of the commissioners themselves, given five years after making their report, which they say was made in strict conformity to the instructions of the court. After a long lapse of time, the removal of buildings and a complete change in the condition of the property, and when recollection of the matter has become vague and uncertain, the findings of commissioners, made in pursuance of proper

instructions from the court, as to the elements of damages to be considered, and supported by the evidence of a number of witnesses of intelligence and experience, will not be set aside as excessive, although the commissioners, aided by memoranda, furnished by one of them, state that $5,000 of the $22,900 allowed by them was "for taking a man's business away from him."

Error to a judgment of the Hustings Court of the city of Richmond, in a condemnation proceeding, wherein the Chesapeake & Ohio Railway Co. was the plaintiff, and C. E. Hunter's Administrator and heirs were the defendants. To a judgment allowing the defendants less damages than were reported in their favor by the commissioners, Hunter's Administrator assigns error.

*Reversed.*

The trial court incorporated in its order of May 7, 1900, the following instructions, to-wit:

"The commissioners, acting under this order, are to inquire and ascertain what is just compensation to the owner of the property, C. E. Hunter, that is to say, its fair cash market value, and in making up their award, they are to consider:

"(1) The fact that this is an old and established place of business, where a large and profitable business was transacted for more than half a century.

"(2) They are to consider that this building was erected, and is adapted especially for the purposes for which it is used.

"(3) That this stand is so arranged as to give peculiar facilities for receiving and handling heavy machinery and agricultural implements, owing to the peculiar formation of the alley.

"(4) They are to consider the nearness to railroad depots and wharves.

"(5) They are to consider the expense of moving the large stock of goods carried by Mr. Hunter.

"(6) They are to consider that Mr. Hunter is entitled to just

compensation for his property. He is entitled to its full equivalent, and the value of the property in this case should be determined by its productiveness, the profit which its use brings to the owner; but the Commissioners are not to consider the profits of the business conducted by the defendant, except in so far as they go toward showing that the defendant carried on a large and lucrative business.

"(7) They are to consider the adaptability of this property for railroad purposes, having reference to the topography of the city and any other use to which this property is plainly adapted."

"The following is a copy of instructions to guide commissioners offered by counsel for Hunter, and accepted by the court, on May 7, 1900.

"Mr. Hunter is entitled to just compensation for his property. He is entitled to its full equivalent, and the value of the property in this case should be determined by its productiveness, the profit which its use brings to the owner; but the commissioners are not to consider the profits of the business conducted by the defendant, except in so far as they go towards showing that the defendant carried on a large and lucrative business.

*A. W. Patterson* and *George R. Fitzhugh,* for the plaintiff in error.

*Henry C. Wickham* and *Henry Taylor, Jr.,* for the defendant in error.

CARDWELL, J., delivered the opinion of the Court.

This writ of error is to a final judgment of the Hustings Court of the city of Richmond, in a proceeding instituted by the defendant in error, The Chesapeake and Ohio Railway Company, against plaintiff in error's intestate, C. E. Hunter,

to acquire title, by condemnation, to a certain parcel of real estate situated on Main Street, between 15th and 17th Streets, in the city of Richmond, owned by Hunter, and upon which, for many years prior, a large and profitable business had been conducted in receiving, handling and selling heavy machinery, agricultural implements, etc., the premises being peculiarly adapted, by reason of location and otherwise, to the purposes for which they had been used.

The whole of the premises being considered necessary, and therefore demanded, for the purposes of the railway company, commissioners, as provided by statute, were appointed to view the property, and, upon hearing such proper evidence as either party might offer, to report what would be a just compensation to Hunter. These commissioners filed their report on the 28th of October, 1899, ascertaining the compensation to be paid Hunter at $15,000, but, upon exceptions taken by Hunter, the court, by its order entered April 30, 1900, set aside the award, and, by a further order, entered May 7, 1900, new commissioners were appointed, the court giving to them minute instructions, in writing, to guide them in the discharge of their duties. To the giving of these instructions, defendant in error objected, and tendered another instruction in lieu thereof, which was refused.

Three of these new commissioners acted, and filed, on the 22nd day of May, 1900, their award, ascertaining that a just compensation for Hunter, for the property in question, would be the sum of $22,900, and stating that, as the whole of the property was required for the purposes of the defendant in error, there was no question of damages as to residue of the tract, etc. To this report, the defendant in error excepted on four grounds, stated in writing, and moved that the report be set aside.

After the filing of this report, Hunter departed this life, and his death being suggested, the court, by its order entered on the 26th day of July, 1900, made plaintiff in error, St. George

R. Fitzhugh, administrator of Hunter, deceased, and Hunter's widow and children, parties defendant to these proceedings, and directed that they thereafter proceed in the name of these defendants.

No action was taken on the report of the commissioners bearing date May 22, 1900, until March 22, 1905, when defendant in error introduced the three commissioners, who made the report and examined them as to how they arrived at the amount awarded Hunter. They had not furnished the court any information as to how they arrived at the amount awarded, and when examined as witnesses, about five years afterwards, it appears from their testimony that, while they could not, with any degree of certainty, give the grounds of the award made, they were positive that they had followed the minute instructions of the court as they were understood at the time. Testifying from memory, aided only by some loose memoranda kept, they further say in effect, that, in making up the amount of the award of $22,900, the sum of $5,000 was included for injury to the business of Hunter. In other words, according to their memory as to what occurred five years before, $5,000 was allowed for damage, interruption, etc., of Hunter's business, *i. e.*, for "taking a man's business away from him." Whereupon the court entered its order, to which this writ of error was awarded, reducing the amount of the award from $22,900 to $17,900.

The ruling of the court, setting aside the award of the first commissioners, was assigned by counsel for defendant in error as cross-error under Rule IX of this court, but the assignment was waived, as the evidence upon which the award was made is not properly a part of the record brought before us.

The first question for our determination is, What was the true rule, under the constitutional and statutory inhibition, that private property shall not be taken for public uses without just compensation, governing in ascertaining the damages to Hunter when his property was taken?

It is most earnestly and ingeniously argued by counsel for plaintiff in error, that as the Constitution forbade the taking of any private property whatever, without *just compensation* being made to the owner thereof, in construing our statute in relation to the exercise of the power of eminent domain by a private corporation, the court should give to the language employed in the Constitution and the statute, a meaning sufficiently broad to enable the owner of property to demand and receive *just compensation* for not only the property taken, but for any property rights sacrificed or impaired by the taking, which would include injury to the business theretofore conducted on the property, and the consequential costs incurred in changing the locality of the business. In other words, the business conducted by Hunter on the property taken, was a property right—private property—coming within the protection afforded by the Constitution and the statute, which could not be interrupted or damaged without *just compensation.*

Of the numerous decisions of other States cited in the petition for this writ of error, we need only say that they do not support the contention of counsel when the whole of the decision is read, or else were rendered under constitutions and statutes different from the constitution and statutes controlling in the decision of this case, or are cases where part of a tract was taken and damage to the residue was the point considered, or cases of temporary suspension of business, where the loss was capable of being estimated. It is a matter of course that, where the constitution and statute of a state provide, not only for just compensation for property taken, but for all damages that the owner may suffer by reason of the taking, the rule governing in ascertaining the amount of damages to be awarded the owner, would be very different from the rule so long established in this State, and followed by the lower court in this case, where the whole property is taken and no question arises as to damages beyond the fair market value of the property.

In a note to *Hamilton* v. *Pittsburg &c. R. Co.,* 51 L. R. A.

330, reviewing the decisions of other states on the subject, it is said: "Some of the cases have permitted evidence of and recovery for profits lost by the suspension of business, where it has to be moved during the time required for obtaining another situation and for moving. This allowance is based upon the theory that, as the loss of profits from the suspension of business while moving would enter into the consideration of the price to be charged by an owner voluntarily selling, it should be considered in determining the market value in case of a compulsory sale under eminent domain proceedings."

Those cases are authority for the proposition that, where property is taken for a public use, requiring a removal of a business conducted on it theretofore, the owner, apart from the value of his property taken, the expenses incurred in moving, etc., is entitled to recover for loss of profits from the suspension of business while moving; but this rule of law finds no sanction in our own decisions, nor is it regarded as the established rule by the weight of authority in this country.

We are called upon also to consider a line of decided cases supporting the proposition, that the owner of property is entitled by law to the undisturbed and exclusive enjoyment of his estate, and to keep out all trespassers, this being a part of his property in his estate; but clearly they do not apply, as defendant in error was in no sense a trespasser upon the property of Hunter or his property rights, when proceeding, by authority of law, to acquire title to his property by condemnation for a public use.

Citation of another line of cases is also made in support of the contention, that the quiet use and enjoyment of property is to be separated and distinguished from the property itself, so as to entitle the owner to just compensation for both, when the property is taken in the exercise of the power of eminent domain; but, again, we have to say that these cases do not apply to this case. The leading case in that line of cases is *B. & P. R. Co.* v. *First Bap. Church,* 108 U. S. 331, 27 L. Ed. 739, 2 Sup. Ct. 719. In that case, the judgment of the lower

court, in favor of the church, was upheld, on the ground that the engine-house and repair shop, as they were conducted by the railroad company, were a nuisance in every sense of the term, and for the annoyance and discomfort of the congregation in the enjoyment of their church edifice for religious exercises, prayer and worship, courts of law would afford redress by giving damages against the wrong-doer, and when the causes of annoyance and discomfort are continuous, courts of equity would interfere and restrain the nuisance. That is by no means the case we have before us.

With respect to our own decisions, we are told in the argument, that, while the measure of damages in many cases may be the market value of the property condemned, in ascertaining that value it is competent to prove any use, the highest and best use, for which it is adapted; but the most enlightened courts have never held that the market value is the only standard, and that cases may not, and do not, arise where a proper observance of the constitutional provision, that private property shall not be taken for public use without just compensation, may require the award of damages actually sustained, other than those measured by the market value of the property taken.

By an unbroken line of decisions of this court, in harmony with the text-writers and the decisions of other States having a constitutional provision similar to our own, the rule governing in ascertaining the damages to the owner of property taken, as in this case, is, that he shall be paid the fair market value of the property at the time of its taking; but no effort has ever been made to fix beforehand all of the things which may go to make up the market value of property, while it has not been so difficult to say that a particular element of damage or loss does not enter into the market value, and should not be included. In other words, what elements properly enter into consideration in determining the market value of property is necessarily an open question in every case of this character; but it is not necessary to consider that question at length in this case.

The authorities agree that loss of profits in a business destroyed or damaged, where property is taken in the exercise of the power of eminent domain, is not an element for consideration in determining the market value, because a matter of speculation and conjecture, while the profits earned in a business conducted on the property taken are proper to be considered in determining the market value of the property. If "the cost of reproduction, is the very lowest amount which should be awarded a person whose business is taken away from him by the strong arm of the law," and this amount should be increased by other considerations, such as the disturbance of business, incidental expense in storing merchandise, etc., as is contended by the learned counsel for plaintiff in error, the question naturally presents itself, Why did not the framers of our constitutional and statutory provisions against taking private property for public use, without just compensation, so declare?

How far the reasoning in support of the view contended for by counsel would control, where only a part of the owner's property is taken, and the damage to the residue is also to be ascertained and paid him, or where, as under our present Constitution, it is provided that private property shall not be taken or *damaged* without just compensation, we are not called upon to consider, as the rights of Hunter are fixed by the provisions of our old Constitution, which was superseded by the new on July 10, 1902.

Counsel would have us disregard the decisions of this court and follow the reasoning of other State courts, conflicting more or less with our own decisions, upholding the rule that the market value of property taken, as in this case, is the guide in ascertaining the just compensation to be paid the owner; but, as we have said, we are unable to find that our decisions are out of harmony with the great weight of authority in this country.

In *Richmond &c. R. Co.* v. *Chamblin & Scott,* 100 Va. 401, 41 S. E. 750, it is said: "In determining the value of land appropriated for public purposes, the enquiry must be, What is

the property worth in the market for its availability for valuable uses, both now and in the future? * * * The authorities we have cited from the adjudicated cases and text-writers, seem to us, sufficient to justify the commissioners in taking into consideration the use to which the property has been devoted by Chamblin & Scott as an element entering into their estimate of its market value." But it was there also held, that "damage to trade or business is generally too remote to be a subject of damages."

With reference to that case, counsel point to the fact that only a text-writer and an encyclopedia are cited in support of the last proposition, but fail to point out wherein the decision itself is out of harmony with the long line of decisions by this court, to which it belongs.

In *Richmond & P. R. Co.* v. *Seaboard &c., Co.,* 103 Va. 399, 49 S. E. 512, the opinion says: "It is the present actual value of the land, with all its adaptations to general and special uses * * * that is to be considered." And, again, quoting from Lewis on Eminent Domain, "The conclusion from the authorities and reason of the matter, seems to be that witnesses should not be allowed to give their opinion as to the value of property for a particular purpose, but should state its market value in view of any purpose to which it is adapted. * * * But, when all the factors and circumstances have been shown, the question at last is, What is it worth in the market?"

Without attempting to review the authorities further, the established rule of this court, recognized and approved by text-writers and by the Supreme Court of the United States, is, that the full and perfect equivalent for the property taken in proceedings of this character is what the law contemplates as the market value thereof, and no sufficient reason or authority is brought to our attention which would justify us in departing from that established rule in this case.

It remains, however, to be determined whether or not the court below erred in holding that $5,000 of the award made

to Hunter was for damage to his business, and properly struck that amount out of the award.

The undisputed facts are, that the property taken was erected for the identical business which Hunter was conducting at the time; that the property had been devoted to that business for more than forty years; that Hunter had conducted the business at that stand since January, 1891; that the building was large, strong and thoroughly adapted to storing and handling heavy machinery, such as farming implements, wagons, etc., which was the business being conducted by Hunter; that the alleyway afforded facilities for receiving and shipping stock which could scarcely be duplicated in the city of Richmond; and that the annual profits of Hunter's business conducted on the property had been from $4,300 to $4,500 until 1899, when the annual profits were $6,000, and there had been a steady growth in the business. A number of leading business men, speaking from experience, testified that no amount less than $25,000 would compensate Hunter for having his property taken from him, and some of them say that they, if in Hunter's place, would not part with the property for $25,000, and still others fix the value of the property at more than that amount. In other words, they regarded the property, by reason of the uses made of it, its convenience and advantages, and yielding a profit from the business conducted thereon, as above stated, as worth, in the market, the sum of $25,000. It is true, that other witnesses, mainly engaged in the real estate business, do not agree in the views of the witnesses testifying for Hunter, and therefore, do not estimate the market value of the property as high, nor did the commissioners allow Hunter the full amount to which his witnesses, by a consensus of opinion, considered he was entitled.

In *Richmond &c. R. Co. v. Chamblin & Scott, supra,* the court expressly disclaimed an intention of considering all the elements that go to constitute the value of the property, saying that "the best that can be done is to appoint capable and up-

right commissioners to go upon the land, examine and hear testimony, and consider all the facts and circumstances surrounding the situation, and likely to enter into, the value of the land to be taken, and the effect of such taking upon the residue of the tract." In discussing the elements of damage which the commissioners should have taken into consideration in ascertaining the compensation to which Chamblin & Scott were entitled, the opinion says: "In any business, and especially such as involves the movement of heavy freight, ease of access to and from the place where it is conducted, and facility in reaching lines of transportation, must be important, if not controlling factors, and as the value of property consists in its fitness for profitable use, its market value must be influenced, in large measure, by locality. There is no evidence in the record showing the profits of the business of appellees, and this is as it should be, but it is shown that the movement of freight from the premises to the railroads and from the railroads to the land in question, would be very much more difficult and costly, and these causes would affect any business, by whomsoever conducted at that place.

The report of the commissioners in this case did not afford the court any information as to how the amount of the award to Hunter was arrived at, and, as has been remarked, it was about five years after their report was made, and made in accordance as they testify with the instructions of the court, before the commissioners were called upon to state the grounds of their award, and this, after all vestige of the property condemned had been destroyed and the ground on which Hunter's business had been conducted, appropriated for railroad purposes, rendering another view of Hunter's property, as it was when taken, impossible. The testimony of the commissioners as to what were the elements they considered in making up their award is, in the very nature of the case, vague and unsatisfactory, and they in fact, admit that, after that lapse of time, they could not say positively anything, except that they followed

the explicit instructions of the court as to the elements of value. True, they each, aided only by some memoranda furnished by one of them undertake to say that $5,000 was allowed for damage, interruption, etc., to the business—that is, "for taking a man's business away from him."

The vagueness and unsatisfactory character of this ·testimony, given at so late a day, after they had made their award and filed it with the court, is made all the more apparent when read in connection with the evidence to which we have adverted, going to show that the market value of Hunter's property, when taken, was at least the amount of the award, without any sort of reference to damage to his trade or loss of profits in his business.

It has been again and again declared by this and other courts, that, in the very nature of things, the finding of the commissioners is entitled to great weight, and is not to be disturbed unless it is shown to be erroneous by clear proof. *Richmond & Petersburg R. Co.* v. *Seaboard &c. R. Co., supra,* and authorities cited.

In *Cranford Paving Co.* v. *Baum,* 97 Va. 501, 24 S. E., 906, this court said: "When it becomes necessary to ascertain what is just compensation for land taken for public use, as in the present case, the statute directs that the court shall appoint five disinterested freeholders as commissioners to perform this duty, and requires that, in its performance, they shall themselves view the land so taken. The law lays great stress upon the matter of the view, and justly attaches great weight to the report of the commissioners. They are greatly aided, as they were in this case, by the evidence of their own senses. They have the advantage of seeing the land itself which is taken, and judging as to its value. * * * They have, as they also had here, after having their attention especially drawn to the element of damage relied upon, the opportunity to apply the evidence produced before them to the subject of the controversy, and to determine the weight to be given to its several parts. We are without the benefit of their opportunities and of what they saw

and were the judges, and it should be a very clear case, indeed, of inadequate compensation to justify the court in disturbing their sworn, deliberate and disinterested judgment as disclosed in their report."

In *Shoemaker* v. *United States,* 147 U. S., 282, L. Ed., 13 Sup. Ct. 361, the opinion, quoting from Mills on Em. Dom., says: "An appellate court will not interfere with the report of commissioners to correct the amount of damages, except in cases of gross error, showing prejudice or corruption. The commissioners hear the evidence and frequently make their principal evidence out of a view of the premises and this evidence cannot be carried up so as to correct the report as being against the weight of evidence. Hence, for an error in the judgment of commissioners in arriving at the amount of damages, there can be no correction, especially where the evidence is conflicting. Commissioners are not bound by the opinions of experts or by the apparent weight of evidence, but may give their own conclusions." See also the recent case of *Tidewater Ry. Co.* v. *Cowan,* 106 Va. 817, 56 S. E. 819.

While, on the face of the report in this case, which was borne out by the evidence returned therewith, there appears nothing going to show that any improper elements of damage entered into the award, these commissioners, long after the award, and when the whole matter had gone entirely out of their minds, each undertakes to speak for himself as to what elements of value were considered, although each of them had signed the report at the time it was made. We find nothing in the instructions of the court to justify the conclusion that the commissioners were misled to take into their consideration improper elements of damage.

When testifying from memory, confessedly uncertain by reason of the lapse of time, they, in effect, agree that $5,000 of the award was "for taking a man's business from him," but whether this, and other like considerations, had influenced them only in agreeing upon the fair market value of Hunter's property, or

had induced them to allow $5,000 for taking Hunter's business from him, in addition to the fair market value of his land and buildings taken, does not clearly and satisfactorily appear, and under the conditions then existing, no reasonably fair test could be made as to whether the market value of the property of Hunter taken was or not as much as the amount awarded him, considering only proper elements of damage in such cases, as every vestige of Hunter's property, except the land itself, had been removed, and the land occupied by buildings or other structures of the defendant in error. The record shows that these commissioners were capable and upright men of business experience, and with large business interests, requiring their constant attention, and doubtless when they had discharged the duties required of them by the court's order, signed and filed their report, the whole matter was discarded from their minds, so that, when called on to testify touching the considerations that influenced their award, it was quite natural that they could not, upon their oath, be positive as to anything, except that they had followed the instructions of the court in reaching their conclusion. Upon the face of the report, there appears no infirmity, and, as has been stated, there was evidence taken which, besides the view of the property by the commissioners, would have justified them in fixing the market value of Hunter's property at the amount of their award.

The established rule that the finding of the commissioners is entitled to great weight, and is not to be disturbed unless it is shown to be erroneous by clear proof, is not to be disregarded or even affected by the mere fact that the evidence relied on to show that the finding is erroneous, is given by the commissioners themselves. The question in such a case is, whether or not the proof can be considered as sufficiently clear and satisfactory to warrant the setting aside of the award of the commissioners, made upon evidence before them at the time, aided, and greatly aided in the majority of cases, by the evidence of their own senses, they having the advantage of seeing the property itself, which is taken, and judging as to its value.

Opinion.

In view of the facts and circumstances which have been narrated, we do not consider that the proof relied on as justifying the lower court in striking from the award made by the commisioners of $22,900 as the value of Hunter's property taken in these proceedings, the sum of $5,000, because improperly included in the award, for damages to business, etc., is that clear and satisfactory proof, which the established rules of law require; therefore, the judgment of the lower court will be reversed and annulled, and the cause remanded to that court, to be further proceeded with in accordance with this opinion.

*Reversed.*