## Wytheville.

## E. P. DUNCAN v. STATE HIGHWAY COMMISSION.

June 11, 1925.

Argued before Judge Chichester took his seat.

1. EMINENT DOMAIN—*Appeal and Error—Amount in Controversy—Case at Bar.*—In the instant case, there was a motion to dismiss the writ of error to the action of the court below condemning lands of the plaintiff in error on the ground that the amount in controversy was less than $300.00. The damages awarded was $150.00. Plaintiff in error claimed that the land taken was worth $564.00. The motion to dismiss the writ of error was therefore overruled.

2. EMINENT DOMAIN—*Appeal and Error—Amount in Controversy.*—On appeal by a landowner in eminent domain proceedings on the ground that the damages awarded him were inadequate, the amount in controversy is the *bona fide* claim of damages suffered by the landowner.

3. JURISDICTION—*Amount in Controversy—Plaintiff's Claim.*—Jurisdiction is determined, not by the amount which may come in question, but by the amount of plaintiff's claim, or that by which defendant can discharge himself.

4. EMINENT DOMAIN—*Evidence—Amount Offered Landowner by Condemning Officials.*—In condemnation proceedings, it was not error for the court to exclude testimony showing the amount offered by the State Highway Commission for the land of the defendant that it desired. Offers made by the condemning party to the owner for the property in question are in the nature of an attempt to compromise, and cannot be proved.

5. EMINENT DOMAIN—*Value of Land—Offer of State Highway Commission.*—In condemnation proceedings, although the chairman of the State Highway Commission was willing to pay more for the property than the amount awarded, this does not prove the value of the land.

6. EMINENT DOMAIN—*Damages—Just Compensation—Present Fair Market Value.*—Where the property and property rights proposed to be taken have a present fair market value, that value at the time of the taking is the "just compensation" to which the owner is entitled under the constitutional provisions on the subject, and is the measure of the award the commissioners should make to the owner therefor;

and not the value after future development of the property, or in the vicinity of it, has been made.

7. EMINENT DOMAIN—*Damages—Market Value.*—The full and perfect equivalent for the property taken in condemnation proceeding is what the law contemplates as the market value thereof.

8. EMINENT DOMAIN—*Value of Land Taken—Value for Subdivision Purposes—Case at Bar.*—In the instant case it was contended that the commissioners in condemnation proceeding failed to take into consideration the value of the land for subdivision purposes; that they were ignorant as to value and negligent in getting evidence as to the value of the land.

   *Held:* That an examination of the testimony of the commissioners failed to sustain this contention.

9. EMINENT DOMAIN—*Findings of the Commissioners—Report must Stand Unless Good Cause be Shown Against it.*—In the very nature of things the assessment of damages must be delegated to an impartial commission, whose award shall be subject to revision by the court. These commissioners are required by statute to be freeholders, and the responsibility of their selection rests upon the court. They are usually capable and upright men, who go upon the land, examine it, hear testimony if any is offered, consider all the facts and circumstances and render their award accordingly. Unless "good cause be shown against it," the report of the commissioners must stand.

10. EMINENT DOMAIN—*Findings of the Commissioners—Appeal and Error—Report must Stand Unless Good Cause be Shown Against it—Case at Bar.*—In the instant case the trial court was of the opinion that good cause was not shown why the report of commissioners in eminent domain proceedings should not be confirmed. On appeal, therefore, the case stands with the plain mandate of the statute in favor of the judgment of the trial court. In the face of the record where it is shown that numerous witnesses testify directly opposite to each other as to the value of the land, it is impossible for the Supreme Court of Appeals to say that the judgment of the trial court, who saw the witnesses and heard them testify, is plainly wrong or without evidence to support it.

11. APPEAL AND ERROR—*Findings of Trial Court—Weight to which Findings Entitled.*—When all matters of law and fact are submitted to the trial court, its judgment will be affirmed (although there may exist a doubt as to its correctness) unless it is plainly wrong or without evidence to support it.

Error to a judgment of the Circuit Court of Culpeper county confirming the report of commissioners in condemnation proceedings.

*Affirmed.*

The opinion states the case.

*Hiden, Bickers & Button*, for the plaintiff in error.

*J. F. Hall* and *Waite & Perry*, for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

This is a writ of error awarded by one of the judges of this court to the action of the court below, condemning the lands of plaintiff in error for highway purposes.

On the 21st day of September, 1923, H. G. Shirley, chairman of the Highway Commission of Virginia, filed his petition in the circuit court, alleging, among other things, that he is authorized by the laws of the State to condemn land for the construction, reconstruction, alteration, maintenance and repair of roads embraced in the State highway system; that he has made a *bona fide* effort to agree, having offered E. P. Duncan the sum of $248.50 for the land to be taken, which offer the owner refused to accept, and because of the inability of the owner to agree upon the price or terms, he cannot agree to the terms of purchase with those entitled to the land, which is wanted to be taken and used in the construction, reconstruction, alteration, maintenance and repair of project S-290, route 32, a road embraced in the State highway system; that accompanying this petition is a plat which fully describes the land sought to be condemned.

The prayer of the petition is that commissioners be appointed, as provided by law, to ascertain what will be a just compensation for the land proposed to be condemned for his use, and to award damages, if any, resulting to the adjacent or other property of the

owner, beyond the peculiar benefits that will accrue to the property from the construction of the road.

The Commission, composed of five disinterested freeholders, was appointed, and pursuant to the statute a day was designated for the commission to meet. On the 30th day of October, 1923, the day designated in the order, the commissioners, after being duly sworn, met upon the land for the purposes mentioned in the order. The report of the commission is as follows:

"We, D. W. Kelly, J. H. Guinn, T. T. Shadrach and E. L. Mahoney, four of the five commissioners appointed by the Circuit Court of Culpeper county, Va., to ascertain what will be a just compensation for such part of the land of the freehold whereof E. P. Duncan is tenant, and for such other property as is proposed to be taken by the State Highway Commission, and to assess the damages, if any, resulting to the adjacent or other property of the said tenant or owner, or to the property of any other person, beyond the peculiar benefits that will accrue to such property respectively, from the construction and operation of said highway, as a part of the highway system of Virginia, do certify that on the 30th day of October, 1923, the day designated in said order, we met together on the said part of the land, the limits of which part were then and there described to us as follows, to-wit:  1,260 feet long and ten feet wide, aggregating 12,600 square feet or 28/100 of an acre; and after being duly sworn, upon a view of the part aforesaid, and of the adjacent and other property of said owner and of the property of other persons, who will be damaged in their property by the construction and operation of said State highway, and upon such evidence as was before us, we are of opinion and do ascertain that for the said land to be taken

$100.00 will be a just compensation and $50.00 for damages for fencing; and it is distinctly understood that the said Duncan is to remove the fence now on said land and erect the fence cutting off this strip from the residue of said land as he sees fit, that is the fifty dollars is to cover all damage of fencing. The total damages allowed by us being $150.00. The damages to the adjacent and other property of said tenant or owner, and the property of other persons who will be damaged by reason of the construction and operation of said State highway beyond the peculiar benefits that will accrue to such property respectively, from the construction and operating said way, are nothing.''

When the report was filed, plaintiff in error excepted to the same on the following grounds:

"That the amount allowed him for the land taken from his said tract or parcel of land adjacent to the town of Culpeper, in the county of Culpeper and State of Virginia, for the amount taken, to-wit: 28/100ths of an acre, and the amount allowed for all damages, $150.00, is grossly and entirely inadequate.

"That he has been offered $1,000.00 per acre for the entire tract, and that the frontage on said tract from which the said roadway is taken is much more valuable than the other part of the said tract of land.

"That H. G. Shirley, chairman of the Highway Commission of Virginia, offered the said defendant $248.50 for the said 28/100ths of an acre of said land to be taken for said purposes of said Highway Commission, which the said defendant declined because this amount was in his opinion entirely inadequate.''

The court having heard the evidence and arguments of counsel, confirmed the report of the commissioners and allowed plaintiff in error the sum of $150.00 damages.

It is to that action of the court this writ of error was awarded.

[1-3] A motion to dismiss the writ of error as improvidently awarded has been made by the defendant in error, on the ground that the amount in controversy is less than the sum of $300.00, the jurisdictional amount fixed by section 6337, Code of 1919, for this court.

The proceedings in this matter were brought under the provisions of chapter 403, Acts of Assembly 1922. Upon the question of the right of a landowner to contest the award of damages found by the commissioners, the act provides:

"Upon the return of the report of the commissioners or viewers appointed in such proceeding, the sum ascertained thereby as compensation or damages to the property owners may be paid to the person or persons entitled thereto, or for them into court or to the clerk thereof, upon which title to the property and rights condemned shall vest in the Commonwealth of Virginia in fee simple, or to such extent as may be prayed for in the petition, and the chairman shall have the right to enter upon such construction upon or use of the property and rights condemned as may be authorized by said report, provided the right of appeal from or review of said report on exception thereto is hereby given to the property owner, or to the chairman, to the circuit court, on the question only of damages or compensation."

It is to be observed that the sole question for the determination of the court is one of damages, which question may be presented in various ways, either by the property owner or the chairman of the Highway Commission. In the instant case the property owner raises the question by excepting to the report of the

commissioners on the ground that the damages awarded are inadequate, and asserts and introduces proof that the .282 of an acre taken is worth the sum of $564.00. In cases of this nature, the exceptor is the plaintiff and exception filed takes the place of a declaration, and the amount involved is the *bona fide* claim of the damages suffered.   In *Hawkins* v. *Gresham*, 85 Va. 34, 6 S. E. 472, it is held that the jurisdiction is determined, not by the amount which may come in question, but by the amount of plaintiff's claim, or that by which defendant can discharge himself.

The claim for the plaintiff in error being for the sum of $564.00, and proof being offered to sustain the same, if this court should adopt the view of plaintiff in error, then under the provisions of section 6365 of the Code of 1919, instead of remanding the case for a new trial, judgment could be entered here for the amount to which plaintiff in error would be entitled.

The motion to dismiss the writ of error will be overruled.

This brings us to a consideration of the assignment of error relied on by the plaintiff in error.

[4] First:   "This assignment of error was the refusal of the court to admit testimony showing the amount offered by the State Highway Commission for the land of the defendant that it desired."

There is no merit in this assignment.

In Lewis on Eminent Domain, volume 2, section 666, it is said:   "Offers made by the condemning party to the owner, for the property in question, are in the nature of an attempt to compromise, and cannot be proved."

In *Upton* v. *South Branch Reading R. R. Co.*, 8 Cush. (Mass.) 600, the court held:   "The evidence offered by the petitioners to show that the respondents have

made a certain offer to them for their damages was properly rejected."

In *Metropolitan St. Ry. Co.* v. *Walsh*, 197 Mo. 392, 94 S. W. 860, this is said: "There was also an inquiry made of witness Harrison, as to his knowledge of what price the railway company had offered for this property prior to institution of condemnation proceedings, and the further inquiry as to whether or not the sum of seven or eight thousand dollars had been offered. It will suffice to suggest that while it may be proper to say that there was a failure to agree upon the amount to be allowed for the property desired for public use, it was not essential, nor was it competent to go into details of the negotiations for the purchase of the property, and show different amounts offered to the respondents for it. It was expressly ruled in the case of *Railway Company* against *McGrew*, 104 Mo. loc. cit. 298 (15 S. W. 931), that offers to agree, which were required to be made before legal proceedings could be instituted" (one of the requirements of the Virginia statute) "having failed, all prior negotiations or offers were at an end and testimony of that character was inadmissible. This ruling in the *McGrew Case* was followed in the case of *Railway Company* v. *Eby*, 152 Mo. 606 (54 S. W. 472)."

[5] While it is true, as the petition of the chairman plainly shows, that he was willing to pay more for the property than the amount awarded, this does not prove the value of the land.

[6] "Where the property and property rights proposed to be taken have a present fair market value, that value at the time of the taking is the 'just compensation' to which the owner is entitled under the constitutional provisions on the subject, and is the measure of the award the commissioners should make

to the owner therefor; and not the value after future development of the property, or in the vicinity of it, has been made." *Appalachian Power Co.* v. *Johnson,* 137 Va. 12, 119 S. E. 253.

In *Mississippi & R. River Co.* v. *Patterson,* 98 U. S. 403, 25 L. Ed. 206, it is said: "In determining the value of land appropriated for public purposes, * * the inquiry * * must be what is the property worth in the market, viewed, not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted;. that is to say, what it is worth from its availability for valuable use. Property is not to be deemed worthless. because the owner allows it to go to waste, or regarded. as valueless because he is unable to put it to any use. Others may be able to use it, and make it serve the necessities or conveniences of life. Its capability of being made thus available gives it a market value which can be readily estimated."

[7] In *Hunter* v. *C. & O. Ry. Co.,* 107 Va. 167, 59 S. E. 415, 418, 17 A. L. R. 124, it is held: "* * the established rule of this court, recognized and approved by text writers and by the Supreme Court of the United States, is that the full and perfect equivalent for the property taken in proceedings of this character is what the law contemplates as the market value thereof * * ."

The second assignment relates to "the refusal of the court to consider the evidence of the amount offered. by the State Highway Commission for the land in question in comparison with the amount allowed by the court commissioners." For the reasons stated,. *supra,* this assignment is untenable.

The third, fourth and fifth assignments of error all elate to the action of the court in overruling the ex--

ceptions of the plaintiff in error, on the question of damages allowed by the commissioners and affirmed by the court.

[8] It is contended in the brief of plaintiff in error that the commissioners "all testified that they made no inquiries as to the values in that section, heard no evidence and got no information; that they simply went upon the land, discussed it among themselves, interviewed no one and judged it as to its value as an agricultural property. They were, therefore, ignorant as to value, negligent in getting evidence as to the value of the land, and thoroughly prejudiced against it as being valuable for subdivision purposes, having based their report almost entirely on it as a farm when that was not its true value at all."

To quote the evidence introduced in its entirety would, in our opinion, but encumber this opinion and prove of no material benefit in a solution of the question under consideration. We feel impelled to say, however, that the criticism of the commissioners is too severe.

D. W. Kelly, one of the commissioners who stood before the court unimpeached, testified: "That he is a resident of Culpeper and was one of the commissioners appointed by the court in the condemnation proceedings of *State Highway Commission* v. *E. P. Duncan.* That he has known this land for fifteen years. The land taken amounts to 28/100 of an acre. That in arriving at their conclusions the commissioners took into consideration its past and present value for agricultural purposes and its adaptability for subdivision purposes. That he (the witness) had bought and subdivided property at Culpeper. That he had understood when the commissioners viewed the land that Jones had rented it for eight years at $100.00 per acre

and had an option for the same period to purchase it at $800.00 per acre. That if utilized for subdivision purposes widening the road to a forty foot width would enhance the value of the tract. That he thought $40.00 would be a reasonable amount for moving back the fence, but in the report they put it at $50.00. That there is ample space to subdivide the property after cutting off the ten feet. The owner is a friend of his but he thinks $100.00 a fair price for the land taken. That a great many subdivision lots had been sold in Culpeper and not utilized and the local demand for lots had been supplied. That he sold his (witness') lots at $250.00 per acre and thinks they are more desirable than Duncan's. They were about one-fourth of a mile from the corporate limits. That he bought the old baseball grounds which adjoins the corporate limits for which he paid $300.00 an acre. They are not available for residential purposes. That * * Wert bought lot adjoining thereto at $300.00 an acre. That Saunders sold some of his at $200.00 to $250.00 an acre a year ago. That Nelson had bought some near by at $100.00 per acre. That the condemnation was in October, 1923. That he did not know of any sales that had been made in subdivisions for cash near the Duncan land. That he made no inquiries of adjacent owners as to its cash value for subdivision purposes, and made no such inquiries to any one else. That he did not know that Nelson got $1,200.00 cash per acre for his land, nor that Lightfoot got approximately $1,000.00 per acre cash. That Nelson's land is more valuable than the Duncan's; knows that when you cut up land into lots you sometimes get big prices. Did not add anything to the value by reason of water main being in the road. That persons outside of the town pay double the amount for water rent than those

living inside do and the town reserves the right to cut off the water from those outside in case of shortage of water."

T. T. Shadrach testified: "That he heard Mr. Kelly testify and agrees with his testimony. That he is only fairly conversant with land values at Culpeper. That Mr. Kelly and Mr. Guinn, commissioners, posted him on their views of values. That he placed his value on the land more for subdivision purposes than for agri-cultural purposes."

J. H. Guinn testified: "That he was interested in the mercantile business, farming, and a dealer in live stock. Lives three miles from Culpeper. Did not take any evidence at time viewed Duncan land, but was familiar with land. That in assessing the Duncan land the viewers took into consideration its adaptability for subdivision purposes. Lots would not bring over fifty per cent to seventy-five per cent of what they would bring two years ago."

E. L. Mahoney testified: "We considered its value for agricultural purposes and also for subdivision purposes."

V. L. Saunders testified he sold seventy-four acres adjoining the Duncan land at $204.50 per acre.

The plaintiff in error introduced five witnesses who were business men, real estate agents, builders, and adjoining landowners, who testified, respectively, that the land was worth from $800.00 to $1,900.00 per acre.

The question which the trial court was called upon to determine was one of "conflict of evidence." To us the question for determination is the same.

[9] The doctrine that the findings of the commis-sioners is entitled to great weight has frequently re-ceived the stamp of approval of this court.

In *Crawford* v. *Valley R. Co.*, 25 Gratt. 467, Judge

Bouldin said: "We hold it to be clear and unquestionable, under a plain mandate as well as the spirit of the statute, that the report of the commissioners ascertaining the amount of the compensation and damage to be paid to the landowner, must be confirmed by the court, and judgment entered for the amount reported, unless in the words of the statute 'good cause be shown against it.' This makes the commissioners' report, if no illegality or irregularity appears on its face, at least *prima facie* evidence of the propriety and correctness of the award of compensation and damages; and that award must, therefore, stand as the judgment of the court, or rather, the judgment of the court must accord therewith, unless some sufficient matter be established to vary or arrest it. The landowner must be passive, and the entire onus of showing such sufficient cause is thrown on the objector."

In *Richmond & Petersburg E. Ry. Co.* v. *Seaboard, etc. Ry.*, 103 Va. 404, 49 S. E. 512, 514, Judge Whittle said: "In the very nature of things the findings of the commissioners is entitled to great weight and is not to be disturbed unless it is shown to be erroneous by clear proof. The commissioners are disinterested parties; they act under the solemnity of an oath, and are selected by the court from a conservative class of citizens, freeholders, on account of their peculiar fitness for the service to be rendered. They also possess the advantage of inspecting the property and of seeing the witnesses and hearing them testify." See also *Cranford Paving Co.* v. *Baum*, 97 Va. 501, 24 S. E. 906; *Richmond Traction Co.* v. *Murphy*, 98 Va. 104, 34 S. E. 982; *Richmond, etc. R. Co.* v. *Chamblin*, 100 Va. 401, 41 S. E. 750; *Appalachian P. Co.* v. *Johnson*, 137 Va. 31, 119 S. E. 253.

In the very nature of things the assessment of damages must be delegated to an impartial commission,

whose award shall be subject to revision by the court. These commissioners are required by statute to be free-holders, and the responsibility of their selection rests upon the court. They are usually capable and upright men, who go upon the land, examine it, hear testimony if any is offered, consider all the facts and circumstances and render their award accordingly. Unless "good cause be shown against it," the report of the com-missioners shall stand.

[10] In this case the trial court was of the opinion that good cause was not shown why the report should not be confirmed. The case stands in this court with the plain mandate of the statute in favor of the judg-ment of the trial court.

Section 6363, Code 1919, provides, *inter alia,* that "when a case at law is decided by a court or judge without the intervention of a jury and a party excepts to the decision on the ground that it is contrary to the law and evidence * * * the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or with-out evidence to support it."

In the face of the record where it is shown numerous witnesses testify directly opposite to each other as to the value of the land, it is impossible for this court to say that the judgment of the trial court, who saw the witnesses and heard them testify, is plainly wrong or without evidence to support it.

[11] "When all matters of law and fact are submitted to the trial court, his judgment will be affirmed (al-though there may exist a doubt as to its correctness) unless it is plainly wrong or without evidence to sup-port it." *Standard Accident Ins. Co.* v. *Walker,* 127 Va. 140, 102 S. E. 585.

We are of the opinion that the judgment should be affirmed.

*Affirmed.*