**UNITED STATES of America,**
**Plaintiff,**

**v.**

**9.85 ACRES OF LAND, MORE OR LESS, IN THE CITY OF HAMPTON, VIRGINIA, and Tidewater Development and Sales Corporation, et al., Defendants.**

**Misc. No. 531, Tracts No. 42 and 42E.**

United States District Court
E. D. Virginia,
Newport News Division.

Sept. 1, 1959.

Franklin C. Baugh, Asst. U. S. Atty., Norfolk, Ya., for Government.

Jodie L. Atkins, Newport News, Va., John J. Baecher and S. Beryl Adler, Norfolk, Va., for landowners.

WALTER E. HOFFMAN, District Judge.

In this condemnation proceeding, requiring three days of trial before a jury demanded by all parties, the landowner complains of an award of $21,100 ascertained by the jury as just compensation for certain property taken by the United States of America in fee simple, together with a perpetual and assignable easement and temporary easement for the establishment and maintenance of navigation clearance areas or zones in and over certain other property. The area of the fee simple taking consisted of 3.78 acres, and an additional 3.74 acres were subjected to the easement. Not all of the property owned by Tidewater Development and Sales Corporation, and encumbered by the deed of trust hereinafter stated, was the subject of the proceeding.

The award of the jury was within the permissible range of the valuations fixed by the witnesses. The expert presented by the Government placed a valuation of $11,735 upon the property taken and easement acquired. One Rue, the trustee under a deed of trust on said prop-

erty and engaged in the mortgage loan business in the area of Washington, D. C., valued the property at $91,180. The principal officer of the corporate owner was permitted to testify that the corporation had expended $74,972.25 on the project consisting of 14 houses. Three houses remained on the 3.74 acres subjected to the easement. With one exception, all rulings on evidence were favorable to the landowner. The landowner took no exception to the Court's charge to the jury.

Manifestly the determination of value within permissible limits rested with the jury. It was for this fact-finding body to evaluate the testimony of the witnesses and determine the qualifications of each witness. It is not for the Court to substitute its judgment of value under such circumstances. The award does not shock the conscience of the Court, and to set aside the verdict would be the equivalent of totally disregarding the testimony of the Government's witness, Mears (Meares), who is a fully qualified expert even though he was employed at the time by the Army Engineers—a fact that was clearly revealed by the evidence.

The main contention now advanced by the landowner and the noteholders under the deed of trust is that the United States, at the time of the filing of the Declaration of Taking, paid into Court the sum of $56,100 as "estimated compensation" for the property and easement so acquired—a figure which is $35,000 in excess of the jury award. This information was not presented to the jury, and counsel obviously recognized that such evidence of "estimated compensation" was not admissible as no effort was made to submit such as evidence. Generally, the presentation of such a figure of "estimated compensation" would be prejudicial to the condemnee as it is usually the practice of the acquiring agency to pay into Court a lesser sum than what the evidence upon trial discloses to be the fair market value. The payment of "estimated compensation" into the registry of the Court is nothing more than a compliance with the constitutional rights of the landowner. It has no real bearing upon the amount of just compensation which may ultimately be determined.[1] How the Under Secretary of the Air Force arrived at a figure of $56,100 is unknown and certainly not revealed by the evidence. In fact, after hearing the evidence presented, it is difficult to believe that the Air Force could be so far off in estimating just compensation. It is possible that the Air Force may have learned of the alleged corporate expenditures aggregating approximately $75,000. It is also possible that the Air Force conducted little or no examination as to just compensation before filing its Declaration of Taking. In the usual haste of acquiring property, the Government undoubtedly pays "estimated compensation" into court which is not comparable to the just compensation provided by law. But, in the absence of bad faith, the Court has nothing to do with the amount of "estimated compensation". United States v. 29.40 Acres of Land, D.C.D.N.J., 131 F. Supp. 84; United States v. 44.00 Acres of Land, 2 Cir., 234 F.2d 410, certiorari denied 352 U.S. 916, 77 S.Ct. 215, 1 L.Ed. 2d 123; but see In re United States, 5 Cir., 257 F.2d 844, certiorari denied Certain Interests in Property in Hillsborough County of Florida v. United States, 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 228.

It is argued that the landowner, on petition, could have received at least 95% of the "estimated compensation" paid into Court, without prejudicing its rights to secure a trial of the issue of just compensation. Apparently due to a conflict between the landowner and noteholders, this procedure was not followed in this case. That is neither the fault

---

1. The rule in Virginia is the same. Duncan v. State Highway Commission, 142 Va. 135, 128 S.E. 546; Ryan v. Davis, 201 Va. 79, 109 S.E.2d 409 (June 22, 1959).

of the Court nor the Government. It has nothing to do with the facts of this case.

■ The view expressed by this Court is that where an award returned by the jury is within the permissible limits of the evidence, the amount of "estimated compensation" paid into court by the acquiring agency should not be considered on a motion to set aside the award of the jury. Other than for the consideration of interest on the verdict, the "estimated compensation", if paid in good faith, must be totally disregarded.

The landowner urges that the Government failed to produce any witness who testified as to the figure of $56,100. Indeed, it is not known whether such a witness exists. As land condemnation cases are governed by the Federal Rules of Civil Procedure, rule 81(a) (7), 28 U.S.C.A., the liberal discovery processes available to the parties would readily have brought forth the names and addresses of all persons who may have inspected the properties, or ascertained the values, in behalf of the Government.

■ Wholly without merit is the argument that the verdict was based upon prejudice from the successful effort of the Government to create a bad impression toward the landowner. If such an impression existed, the landowner is not blameless. Perhaps the landowner "overplayed the cards", thus creating the impression that the Government was the victim. The charge to the jury, perhaps unduly favorable to the landowner, would have removed such contended prejudices, if any existed.

During the testimony of Rue, the trustee under the deed of trust, the landowner endeavored to show that a loan was made by Rue and his clients on the subject property. The landowner contended it could show that notes were given for the loan, which notes could readily be converted into cash, and that such is a factor in determining fair market value. Landowner relies upon Riley v. District of Columbia Redevelopment Land Agency, 100 U.S.App.D.C. 360, 246 F.2d 641,

644. In that case the court charged the jury that the term "fair market value" meant "what the property would sell for in cash or on *terms equivalent to cash*", together with the customary language as to a willing buyer and willing seller. The appellate court held that the jury should have received an explanation of the expression "terms equivalent to cash". The evidence disclosed that the property was acquired by the landowner in 1951 at a price of $300 in cash and $9,655 evidenced by three notes secured by trusts upon the property. Monthly payments on the notes aggregated $72.50. Improvements were made and the investment of the landowner by way of obligations (notes) and expenditures amounted to approximately $10,800. Government appraisers valued the property in 1954 at $7,000 or less, and stated that they had attached little significance to the 1951 sale to the landowner because "the third trust would run at perpetuity" as the monthly payment was not enough to pay the interest on the property.

■ The Riley case stands for the premise that a credit *sale* is indicative of the fair market value *only* to the extent to which the notes can be turned into cash, and that the jury was entitled to know the meaning of the term "equivalent to cash". It was important in Riley only because of the fact that evidence of the cost of acquisition of property is admissible on the subject of fair market value, when the acquiring date is sufficiently near in point of time to the date of condemnation.

■ In no sense can this be considered as authority for the contention that the landowner could present evidence as to a specific loan granted to it with a deed of trust being taken as security. Such a pronouncement would violate every principle known in condemnation law as to fair market value. It would, in effect, be most prejudicial to the average landowner whose property is condemned as the lender seldom loans any sum fairly representing the fair market value. Moreover, in this case the loan

was made on the project as a whole and the Government did not acquire all of the land encumbered by the trust deed. It was sufficient protection to the landowner in permitting Rue, the noteholder, to give his appraisal of the fair market value.

Holding that no error exists, the United States Attorney will prepare a judgment order in accordance with the verdict of the jury, and permit a return of the excess deposited with the Clerk to the acquiring agency, or to the Treasurer of the United States, as may be customary in such matters.

 One final word. Subsequent to the jury trial the various noteholders filed a motion to intervene contending that their representation at the trial was inadequate and that a new trial should be awarded. Manifestly, it is unnecessary to specifically name the noteholders as parties defendant in a condemnation proceeding. Assuming arguendo that such is not the law, it is clear from the file in this action that the noteholders, represented by Oliver Ellsworth Rue, were actively participating at all times. Indeed, by letter dated March 6, 1958, addressed to the Clerk, a copy of which was sent to the United States Attorney, the Court, and the attorney for the landowner, Rue complained of inaction by "those charged with responsibility for the discharge of the obligations against this property". By letter dated March 14, 1958, the Court advised Rue that it was the first time the matter had been directed to its attention, but that a trial date would be assigned. Thereafter, by agreement of counsel, the case was heard on July 8, 1958, at Norfolk; this due to the fact that the courtroom at the Newport News Division was in the process of renovation. As indicated, Rue appeared and testified in behalf of the landowner. The noteholders cannot now be heard to complain.

 The motion to intervene is properly filed for the sole purpose of protecting the noteholders in the distribu-

tion of the aforesaid $21,100. The endorsement of the judgment order by counsel for the landowner will be accepted as proof of the fact that the noteholders are entitled to the entire award, less such reasonable attorney's fees as may be due and unpaid, if any, to counsel for the landowner. In the event of a dispute between the noteholders and landowner with respect to the distribution, counsel shall promptly notify the Court in order that the respective rights of these parties may be determined.