STATE HIGHWAY COMMISSION v KOEPNICK

Docket No. 77-2366. Submitted May 3, 1978, at Grand Rapids.—Decided October 2, 1978.

The State Highway Commission petitioned the Kent Circuit Court for condemnation of private property for use in a highway project. Russell G. Koepnick owned a one-half interest in the subject property. Koepnick contested the offered compensation award, and the matter proceeded to a jury trial, in which the Kent Circuit Court, Stuart Hoffius, J., entered a judgment on the jury verdict fixing the amount of compensation. Koepnick appeals, alleging that the trial court erred in precluding him from subpoenaing a highway department appraiser in order to question him regarding his appraisal of the property, as an admission against the interest of the state. *Held:*

The trial court did not err. A landowner may not use a condemning authority's statement of estimated compensation as an admission against interest against the condemning authority.

Affirmed.

Eminent Domain—Condemnation—Evidence—Statement of Estimated Compensation—Admission Against Interest.

A landowner in a condemnation proceeding may not use the condemning authority's statement of estimated compensation or related appraisals as admissions against interest by the condemning authority as to the value of the property; the estimated compensation offered by the condemning authority is merely an estimated statement of value which may reflect intangibles as well as the actual value of the property.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Louis J. Caruso* and *Janis Meija,* Assistants Attorney General, and *Roger D. Anderson,* Special Assistant Attorney General, for plaintiff.

Reference for Points in Headnote
27 Am Jur 2d, Eminent Domain § 423.

*Rhoades, McKee & Boer* (by *Dale W. Rhoades* and *Timothy Hillegonds),* for defendant.

Before: D. E. HOLBROOK, JR., P.J., and BASHARA and R. M. MAHER, JJ.

D. E. HOLBROOK, JR., P.J. Defendant appeals a jury award of $19,950 as just compensation for his property taken by plaintiff Highway Commission. Defendant landowner's sole argument on appeal is that the trial court erred in precluding defendant from subpoenaing a State of Michigan employee and highway department appraiser so as to question him about his appraisal set forth in the statement of estimated compensation filed with the court for the sole purpose of using same as an admission against interest against the state.

The question of what use can be made of the statement of estimated compensation and its related appraisals is one of first impression in this state. Michigan's "quick-take" condemnation law, MCL 213.361 *et seq.;* MSA 8.261(1) *et seq.,* is similar to the Federal Declaration of Taking Act, 46 Stat 1421 (1931); 40 USC 258a–258e. *State Hwy Comm'n v Davis,* 38 Mich App 674, 678; 197 NW2d 71 (1972), *lv den,* 387 Mich 786 (1972). Thus, it is possible to look to the Federal courts for guidance in this area.

The Federal courts have uniformly held that a landowner may not use the condemning authority's statement of estimated compensation, or related appraisals, as admissions by the authority of the value of the property. See *e.g., United States v 2,187.43 Acres of Land,* 461 F2d 938, 940 (CA 8, 1972); *United States v Two Tracts of Land,* 412 F2d 347, 350 (CA 2, 1969), *cert den,* 396 US 906; 90 S Ct 222; 24 L Ed 2d 183 (1969), *United States v 9.85 Acres of Land,* 183 F Supp 402, 404 (ED Va,

1959), *aff'd sub nom, Tidewater Development & Sales Corp v United States,* 279 F2d 890 (CA 4, 1960).

This conclusion is based on the purpose behind the quick-take statute. In *Davis,* the Court quoted extensively from *United States v Miller,* 317 US 369, 381; 63 S Ct 276; 87 L Ed 336; 147 ALR 55 (1943), to illustrate the purpose of the Federal act.

"When the declaration is filed the amount of estimated compensation is to be deposited with the court, to be paid as the court may order 'for or on account' of the just compensation to be awarded the owners. Thus the acquisition by the Government of title and immediate right to possession, and the deposit of the estimated compensation, occur as steps in the main proceeding.

"The purpose of the statute is two-fold. First, to give the Government immediate possession of the property and to relieve it of the burden of interest accruing on the sum deposited from the date of taking to the date of judgment in the eminent domain proceeding. Secondly, to give the former owner, if his title is clear, immediate cash compensation to the extent of the Government's estimate of the value of the property. The Act recognizes that there may be an error in the estimate and appropriately provides that, if the judgment ultimately awarded shall be in excess of the amount deposited, the owner shall recover the excess with interest. But there is no correlative provision for repayment of any excess by the owner to the United States. The necessary result is, so the respondents say, that any sum paid them in excess of the jury's award is their property, which the United States may not recover.

"All the provisions of the Act taken together require a contrary conclusion. The payment is of estimated compensation; it is intended as a provisional and not a final settlement with the owner; it is a payment 'on account of' compensation and not a final settlement of the amount due. To hold otherwise would defeat the policy of the statute and work injustice; would be to encourage federal officials to underestimate the value of

the property with the result that the Government
would be saddled with interest on a larger sum from
date of taking to final award, and would be to deny the
owner the immediate use of cash approximating the
value of his land."

In *United States v Two Tracts of Land, supra,*
Circuit Judge Friendly explained the rationale
behind the rule excluding evidence of the esti-
mated compensation.

"It is altogether clear, indeed claimants concede, that
the 'estimated compensation' paid into court by the
United States is not admissible to contradict a lower
value to which a Government witness testifies at trial.
*United States v 9.85 Acres of Land, etc., Hampton, Va.,*
183 F Supp 402, 404–405 (E.D. Va 1959), *aff'd,* 279 F 2d
890 (4 Cir 1960); *Evans v United States,* 326 F 2d 827,
829–830 (8 Cir 1964). Yet the amounts paid into court
would often reflect appraisals previously obtained, as
seems likely to have been true here, and if policy
forbids admission of the result, it likewise forbids ad-
mission of the source. Moreover, while federal agencies
have a duty to give Congress as accurate a notion of the
cost of a project as they feasibly can, certainty is
impossible and the agencies doubtless recognize it to be
better to err on the high side rather than the low.
While an error on the high side will mean only that
some of the appropriation will not be used, one on the
low side may involve the Government in a project that
Congress would not have authorized if properly ap-
prised of the facts. In submitting an appraisal to the
appropriation committees of the Congress, the executive
branch should not have to run the risk of having this
used against the Government if subsequent investiga-
tion shows it to have been too high. To consider such
submission an adoption sufficient to render the ap-
praisal admissible against the United States would thus
be counter to governmental policy." 412 F2d at 350.

The estimated compensation offered by the con-

demning authority is merely an *estimated* statement of value. It may reflect not only the actual value of the property but also such intangibles as the avoidance of litigation.

Allowing such estimates to be used against the defendant in court would ultimately harm both landowners and taxpayers. The condemning authority would be forced to always underestimate the value of the land so the estimate could never be used to impeach or contradict the appraisals at trial. Such deliberate underestimation would result in the landowner getting less money initially and would result in more contested cases, thus increasing costs and delays due to litigation.

We specifically wish to point out that we do not address the issue of whether appellant could have subpoenaed the witness as his own witness to ask if he was familiar with the subject property and had an opinion as to its value. We merely hold that the witness could not be subpoenaed for the purpose of using his statement of estimated compensation as an admission against interest against the state.

Affirmed. No costs. A public question.